## Andrew J. Olson v. George S. Sheffield et al.

1. CROSS-BILL—*When it May be Amended.*—Where an amendment to a cross-bill does not change the real issue, but only the allegation as to the time when an agreement first went into effect, it may properly be allowed.

2. APPELLATE COURT PRACTICE—*When Objection that Only One of Two Partners Has Taken Appeal, Comes Too Late.*—After both parties have united in the assignment of errors and there is joinder in error, it is too late for appellees to insist that only one of two members of a partnership has appealed.

3. SAME—*One Party May Use the Names of Others for Purpose of Appeal.*—The statute provides (Sec. 71 Practice Act) that where a decree is rendered against two or more parties, either party may remove such suit to the Appellate Court by appeal or writ of error, and for that purpose shall be permitted to use the names of the other parties if necessary.

Mechanic's Lien.—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge. presiding. Heard in the Branch Appellate Court at the October term, 1899. Reversed and remanded. Opinion filed July 10, 1900.

Statement.—The appellee George S. Sheffield filed a bill June 14, 1894, under section 39 of the mechanics' lien law, then in force, alleging that on the third day of February, 1894, said Sheffield entered into a contract with one David A. Blythe for the construction of a building. It is alleged that Blythe partly completed the work, and that the amount due under the contract with Blythe for the work which he did, was not sufficient to satisfy the claims of those who furnished labor and material as sub-contractors. These alleged sub-contractors were made defendants to the suit, and the bill prayed that the respective amounts due them might be ascertained and that the balance due from Sheffield to Blythe under the contract, might be distributed *pro rata* among the claimants, according to the provisions of the lien law.

Among others who were made defendants to the bill were the persons composing the firm of Olson & Clayton,

who answered, and subsequently filed a cross-bill setting up that on or about the third day of March, 1894, they agreed with said Blythe to furnish certain building material to be used in the construction of the building, pursuant to the contract between Blythe and Sheffield; that in pursuance of such agreement they delivered to said Blythe certain of the materials as agreed upon, but that the said Blythe failed and refused to pay for the same; that by reason of said failure and refusal of said Blythe to so perform his part of the agreement, said complainants refused to further deliver material; that thereupon, on or about May 16, 1894, said George S. Sheffield entered into an agreement with said complainants, partly expressed and partly implied, whereby said Sheffield was substituted for said Blythe and became subject to all the duties and obligations and entitled to the rights of said Blythe under the agreement with said complainants; that, thereafter, in pursuance of said agreement with Sheffield, complainants furnished material which was used in said building by said Sheffield; that, in addition to the items furnished in accordance with the agreement as originally made with Blythe, they furnished other material subsequently ordered by said Sheffield, and that he agreed to pay within five days after the completion of said building for all material so furnished, whether under the original contract with Blythe or extra material furnished as aforesaid upon his order. It is alleged that, on August 1, 1894, complainants filed with the clerk of the Circuit Court of Cook County, in which county said premises and improvements are situated, a just and true statement of such account duly verified by affidavit. The cross-bill prays, among other things, that the said Sheffield may be decreed to pay complainants the amount due them.

The answer of Sheffield to this cross-bill admits the contract between complainants and Blythe, but denies that he was ever substituted for Blythe in the contract, and either denies or calls for proof of the other allegations.

DENEEN & HAMILL, attorneys for appellant.

TENNEY, McCONNELL, COFFEEN & HARDING, attorneys for appellees.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Appellant Olson prosecutes this appeal as successor to Olsen & Clayton, of which firm he was a member. Said firm sought by cross-bill to establish a lien as original contractors and to recover against appellee Sheffield by reason of an alleged agreement, whereby Sheffield, the owner of the property, became substituted for Blythe, his architect, with whom appellant's firm made their original contract.

It is sought to maintain a lien as original contractors, first upon the ground that the original contract between Sheffield and his architect, Blythe, was made to deceive and defraud, and Blythe was not in fact general contractor for the building, notwithstanding a written contract to that effect, but was merely agent for Sheffield, the owner.

The master has found that Sheffield and Blythe did endeavor to mislead contractors and place them in a position where they could not establish liens, using the contract between them for that purpose. It appears also, that Blythe, in his answer to one of the cross-bills herein filed by other parties, admits that in the construction of the said building he was architect for Sheffield; that in the work he acted as architect "and as the agent of the owner, said George Sheffield," and that further than this he has no interest in the controversy. If it be true that Blythe's real relation to Sheffield was only that of architect and agent, then notwithstanding the written contract purporting to constitute him an original general contractor, the contract with Olson & Clayton in his name should be treated as the contract of his principal, even though the agency was then known only to Sheffield and himself. There is evidence tending to sustain such a conclusion.

. But whether such evidence be accepted as controlling or not, it appears that Sheffield accepted, in writing, of date March 3, 1894, an order upon him by Blythe for the amount of the original contract with appellant's firm. This con-

tains an itemized estimate of material to be furnished amounting in value to $1,071, bearing the " O..K." of Murray, Sheffield's superintendent. At the bottom is the following : " Please pay above amount to Olson & Clayton as delivered. E. A. Blythe." On the margin appears, " it being understood that we furnish enough to complete building; style and trim to be selected by owner." Signed " O. K. Olson & Clayton." Beneath is, " Accepted. George S. Sheffield."

It was sought by appellant to amend the cross-bill, alleging in substance that the above writing constituted an original contract with Sheffield. This amendment the court refused to allow. It is true it was offered after the master's report had been made and after the case had been submitted to the chancellor. But it was not, after all, new matter. A copy of the itemized estimate with the above order by Blythe, the " O. K." of appellant's firm and the written acceptance by Sheffield, was attached to the cross-bill as originally filed. It is true that the original cross-bill relied upon the alleged written agreement of May 16, 1894, as evidencing the substitution of Sheffield for Blythe as party to the contract originally made with Blythe. Appellant adhered to this theory throughout the case, and adheres to it still. But the delivery of the writing of May 16th was controverted, and we find no good reason why the parties could not amend and assert that such substitution was evidenced not only by the writing of May 16th, but in reality had been acted upon more than two months before that date. There was here no change in the real issue, but only a change in the allegation as to the time when the agreement with Sheffield first went into effect. It was not a change such as was sought to be made in Adams v. Gill, 158 Ill. 190, where an original charge of mistake by an attorney was changed by amendment into a charge of fraud by principals. We think the amendment might properly, and should have been allowed.

But it is urged that even had this amendment been allowed, the writing of March 3d can not be construed as constitut-

ing an original contract with Sheffield. We can not agree with this view. The writing at the foot of an itemized statement or estimate of material to be furnished was in effect an order by Blythe to pay the sum of $1,071 to Olson & Clayton for the materials enumerated as they should be delivered. It contained next a statement by Olson & Company that an understanding existed on their part that they should furnish not only the material enumerated, but also enough more, if more should be needed, to complete the building, the "owner" to select the "style of trim." This agreement equally with the order of payment, and all that precedes, is "accepted" by Sheffield, the owner. The memorandum seems to us to be susceptible of no other construction. It is an agreement by the owner to pay the price mentioned for the material specified as fast as it shall be delivered, and an acceptance by him of Olson & Clayton's proposition to furnish in addition enough of such material to complete the building.

But if this be not regarded as proving a contract with the owner for all material thereafter furnished, as we think it must be, it at least furnishes corroborative evidence that Blythe was acting in his arrangements with Olson & Clayton as the agent of the owner. Otherwise no reason appears why this memorandum should have been submitted to Sheffield at the outset and accepted by him personally before any material was delivered.

It is urged that the paper of May 16th shows an attempt to get something to bind Sheffield, which would have been unnecessary had the memorandum of March 3d been understood as an agreement between him and Olson & Clayton. It appears, and the master finds, that Olson & Clayton had been unable to get payment promptly, and had therefore stopped delivering material, and refused to continue unless Sheffield would pay them $300, and sign a specific agreement to pay the balance. Thereupon Sheffield executed the following:

"May 16, 1894.

I, George S. Sheffield, hereby agree to pay Olson & Clayton whatever sum may be found due them for material

furnished on building 4232 Calumet Ave., according to contract and specifications, within five days after completion of said building.

(Signed)    George S. Sheffield."

As to whether there was an actual delivery of this written agreement is a matter of controversy—the only controverted question, it is said, before the master. Appellant claims the evidence shows that it actually was delivered. Appellees' evidence is to the effect that it was not so delivered, because of a discussion which arose as to its scope, after it was signed and left lying on the table, notwithstanding it had been drawn up by Sheffield's own agent and superintendent, who swears he took it back, and did not know of the existence of the copy.   Patterson, the agent of Olson & Clayton in the matter, testifies that he supposed the letter press copy which he made was " as good as the original," and that he himself gave the original back to Sheffield, who wanted some evidence of what it was he had signed; that he did this because " of course our copy would stay in the book, and I gave him the original," Patterson retaining the copy as a duplicate.

We are not satisfied that this contract of May 16th was not delivered.   It evidently passed into the hands of appellant's agent, and remained there long enough to make the letter press copy.   This indicates intentional delivery, and such delivery, if made, would not be rescinded by merely seizing and carrying away the original without appellant's consent, or taking it with such consent for a special purpose only, leaving a copy for his use.   It is true the original was taken away.   But it was acted upon by both parties as if delivered.   Olson & Clayton resumed, in good faith, the delivery of material which had been suspended pending a specific written promise of payment from Sheffield.   If not delivered, it is clear that Sheffield got the benefit of it, as if it had been.   But Sheffield, on his part, paid the three hundred dollars demanded by Olson & Clayton—whether through Blythe, we do not regard as material.   The interview at which the agreement was executed occurred at appellant's place of business, where Sheffield, Blythe, his

architect, and Murray, his superintendent, had gone together to try to induce Olson & Clayton to resume delivery of the remaining material. In this they succeeded. If the instrument was not in fact delivered, appellant was evidently misled and supposed it to have been binding, and acted accordingly. If, as the master finds, it was not so delivered as to be binding on Sheffield as a contract in writing, we must nevertheless regard the letter press copy retained by appellant as competent evidence tending to show, in connection with the conceded facts, what the understanding between the parties was upon which both of them thereafter acted.

It is said that amendment to the cross-bill, if allowed, would have availed nothing, for the further reason that the claimants were bound by the sworn lien statement filed by them, and that in that statement the contract relied upon was the agreement of May 16th. An examination of that statement, however, shows that its wording is such as to indicate reliance upon both of the alleged agreements with Sheffield—that of March 3d as well as that of May 16th.

It is urged that this appeal is taken and errors assigned by Olson alone, although the cross-bill was filed by Olson and Clayton as partners, and the claim was a joint claim. It appears that Clayton had retired from the firm. The appeal was prayed by and allowed to both Olson and Clayton. Both have united in the assignment of error and there is joinder in error. After this it is too late for appellees to insist that only one has appealed. Hodson v. McConnel, 12 Ill. 170; Robinson v. Magarity, 28 Ill. 423 (426). No motion has been made by appellees to dismiss the appeal, and the latter have assigned cross-errors. The statute provides (Sec. 71, Practice Act) that where a decree is rendered against two or more, either can remove such suit to the Appellate Court by appeal or writ of error, and for that purpose shall be permitted to use the names of the others. if necessary. Such cases shall be determined in the Appellate Court as if all parties had joined in the appeal. The objection now made is technical in its nature. If appellees desired to avail themselves of it, they should have made a motion to dis-

miss. Failure so to do is a waiver of the right to insist upon the objection. Dinet v. The People, 73 Ill. 183 (184); Brady v. The People, 51 Ill. App. 112, and cases cited.

. Other points are presented which we have fully considered, and do not deem it necessary now to discuss. The judgment of the Circuit Court must be reversed, and the cause remanded for further proceedings not inconsistent with the views here expressed. Reversed and remanded.